UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VENTURE GLOBAL, INC., MICHAEL SABEL, JONATHAN THAYER, ROBERT PENDER, SARAH BLAKE, SARI GRANAT, ANDREW OREKAR, THOMAS J. REID, JIMMY STATON, RODERICK CHRISTIE, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, and BofA SECURITIES, INC.,<br><br>Defendants. | Civil Action No.<br><br><u>CLASS ACTION</u><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff FirstFire Global Opportunities Fund, LLC ("plaintiff") alleges the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Venture Global, Inc. ("Venture Global" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a securities class action on behalf of all purchasers of the common stock of Venture Global pursuant and/or traceable to the Registration Statement and Prospectus issued in

- 1 -

connection with Venture Global's January 24, 2025 initial public stock offering (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o. This Court has jurisdiction of this action pursuant to §22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §1331.

3. Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District.

4. In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

5. Plaintiff FirstFire Global Opportunities Fund, LLC purchased Venture Global common stock in the IPO, as set forth in the certification attached hereto and incorporated by reference herein, and was damaged thereby.

6. Defendant Venture Global engages in the development, construction, and production of natural gas liquefaction and export projects near the U.S. Gulf Coast in Louisiana.

7. Defendant Michael Sabel ("Sabel") is, and was at the time of the IPO, the Founder, Chief Executive Officer, director, and Executive Co-Chairman of the Board of Venture Global.

8. Defendant Jonathan Thayer ("Thayer") is, and was at the time of the IPO, the Chief Financial Officer of Venture Global.

9. Defendant Robert Pender ("Pender") is, and was at the time of the IPO, Executive Co-Chairman, director, and Founder of Venture Global.

10. Defendant Sarah Blake ("Blake") is, and was at the time of the IPO, the Chief Accounting Officer of Venture Global.

11. Defendants Sari Granat, Andrew Orekar, Thomas J. Reid, Jimmy Staton, and Roderick Christie are, and were at the time of the IPO, directors of Venture Global.

12. The defendants named in ¶¶7-11 are collectively referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement.

13. Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, and BofA Securities, Inc. served as underwriters of Venture Global's IPO, and helped to draft and disseminate the offering documents (collectively, the "Underwriter Defendants"). Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities. They served as the underwriters of the IPO and shared $70 million in fees collectively. The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to merchandize Venture Global stock in the IPO. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Venture Global, met with potential investors and presented highly favorable information about the Company, its operations, and its financial prospects;

(b) The Underwriter Defendants also demanded and obtained an agreement from Venture Global that Venture Global would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws;

(c) Representatives of the Underwriter Defendants also assisted Venture Global and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of Venture Global, an undertaking known

as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Venture Global's operations and financial prospects;

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Venture Global's lawyers, management, and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Venture Global stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Venture Global would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Venture Global management and top executives, the Underwriter Defendants knew, or should have known, of Venture Global's existing problems as detailed herein; and

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the Class (defined below).

14. The defendants named in ¶¶6-11 and 13 are collectively referred to herein as "defendants."

## SUBSTANTIVE ALLEGATIONS

15. Defendant Venture Global, through its subsidiaries, engages in the development, construction, and production of natural gas liquefaction ("LNG") and export projects near the U.S. Gulf Coast in Louisiana.

16. On or about December 20, 2024, Venture Global filed with the SEC a Registration Statement on Form S-1. After several amendments, on January 24, 2025, Venture Global and the Underwriter Defendants priced the IPO and filed the final Prospectus for the IPO, which formed part of the Registration Statement (collectively, the "Registration Statement").

17. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

18. The Registration Statement positively described Venture Global's business strategy, stating in pertinent part as follows:

> Venture Global has fundamentally reshaped the development and construction of liquefied natural gas production, establishing us as a rapidly growing company delivering critical LNG to the world. Our innovative and disruptive approach, which is both scalable and repeatable, allows us to bring LNG to a global market years faster and at a lower cost. We believe supplying this clean, affordable fuel promotes global energy security and is essential to meeting growing global demand.

19. As described in the Registration Statement, Venture Global is commissioning, constructing, and developing five natural gas liquefaction and export projects near the Gulf of Mexico in Louisiana: (i) Calcasieu Project; (ii) Plaquemines Project; (iii) CP2 Project; (iv) CP3 Project; and (v) Delta Project.

20. The Registration Statement highlighted that the Company makes sales of LNG during the commissioning of its projects and before they are commercially operational. The Registration Statement stated in pertinent part as follows:

> By design, conventional, stick-built projects generally only engage in several months of commissioning production, thereby limiting the number of cargos produced before full commercial operations occur. Due to our unique modular development approach and configuration consisting of many mid-scale liquefaction trains, which are delivered and installed sequentially, it is necessary to commission and test our LNG facilities sequentially over a longer period of time

than traditional LNG facilities with substantially fewer, larger-scale liquefaction trains. The commissioning of the liquefaction trains at our facilities begins while portions of our facilities remain under construction.

This important reliability and technical requirement results in earlier production of LNG than with traditional LNG facilities. We believe this earlier production of LNG positions us to produce a substantial number of commissioning cargos for each of our LNG projects, generating proceeds that may be used to support any remaining construction work or fund subsequent projects and future growth. As an example of this, on March 1, 2022, we announced the successful loading and departure of our first cargo of LNG from the Calcasieu Project, just over two and a half years from our final investment decision for the project. By September 30, 2024, we had loaded and sold 342 LNG commissioning cargos and received approximately $19.6 billion in gross proceeds from such commissioning cargos.

21. The Registration Statement described the Company's LNG sales and purchasing agreements for its projects, stating in pertinent part as follows:

The project companies for the Calcasieu Project, the Plaquemines Project and the CP2 Project have signed LNG sales and purchase agreements, or SPAs, to sell LNG based on a pre-determined pricing formula that commences after we achieve the commercial operations date, or COD, of the relevant project or phase thereof. Under each such post-COD SPA, COD does not occur unless the applicable project company has notified such customer that (i) all of the project's facilities have been completed and commissioned, including any ramp up period, and (ii) the project is capable of delivering LNG in sufficient quantities and necessary quality to perform all of its obligations under such post-COD SPA.

As of September 30, 2024, we have executed 39.25 mtpa of such post-COD SPAs with a well recognized set of third party customers that we believe constitute one of the strongest portfolios of institutional LNG buyer credits in the world. Approximately 95% of our contracted post-COD SPAs – or 37.45 mtpa of such 39.25 mtpa – are 20-year fixed price agreements, providing a long-term stream of contracted cash flow. We have also executed 1.8 mtpa of post-COD SPAs on a short- and medium-term basis and we plan to continue to optimize our portfolio balancing profit, duration, and risk.

22. The Registration Statement purported to warn about the volatility of proceeds from commissioning sales of LNG, stating in pertinent part as follows:

Historical proceeds from the sale of commissioning cargos at the Calcasieu Project, which has had an extended commissioning period due to unanticipated challenges with equipment reliability that we are in the process of remediating, may not be indicative of the duration of the commissioning period or the amount of proceeds for any future period or for any of our other projects. See "Business – Our Liquefaction and Export Projects and Key, Complementary Assets – Calcasieu

- 6 -

Project." Although we have included targeted COD dates for our projects and phases thereof, there can be no assurance that COD will not occur earlier or later than such targets. See "Business – Our Liquefaction and Export Projects and Key, Complementary Assets." If COD occurs earlier than expected for a particular project or phase thereof, it would adversely impact our ability to generate proceeds from the sale of commissioning cargos, which, subject to market conditions, may otherwise be more valuable than the revenues earned under our post-COD SPAs.

*   *   *

As a result, we have experienced, and expect to continue to experience during the remainder of the commissioning phase, significant volatility in the proceeds we have generated from the sales of commissioning cargos from the Calcasieu Project. Since we began generating proceeds from the sale of commissioning cargos in the first quarter of 2022, our quarterly gross proceeds have fluctuated from a maximum of $2.9 billion ($2.4 billion in net proceeds, after deducting net cash paid for natural gas) for the three months ended March 31, 2023, to a minimum of $1.0 billion ($0.7 billion in net proceeds, after deducting net cash paid for natural gas) for the three months ended September 30, 2023. Accordingly, the proceeds we have generated from such sales of commissioning cargos of the Calcasieu Project to date may not be indicative of the duration of the commissioning period or the amount of proceeds from such sales for any future period for the Calcasieu Project or for any of our other projects. As a result, such proceeds, and also our operating results more generally, may vary significantly from one fiscal period to the next comparable fiscal period. Moreover, if we are not able to generate proceeds from the sale of commissioning cargos in the future that are comparable to such proceeds from the Calcasieu Project in the past, that could have a material adverse effect on our business, contracts, financial condition, operating results, cash flow, financing requirements, liquidity, prospects and the price of our Class A common stock.

23. With respect to the cost of completing construction of the Plaquemines Project, the Registration Statement stated in pertinent part as follows:

We currently estimate that the total project costs for the Plaquemines Project will be approximately $22.5 billion to $23.5 billion, including EPC contractor profit and contingency, owners' costs and financing costs, of which approximately $17.7 billion had been paid for as of September 30, 2024.

24. The statements referenced above in ¶¶18-23 were materially false and misleading because they failed to disclose the following facts that existed at the time of the IPO:

(a) that commissioning volumes at the Calcasieu Project were declining and had in fact declined during the fourth quarter of 2024 far in excess of levels expected by the market or purportedly warned about in the Registration Statement;

- 7 -

(b) that the Calcasieu Project continued to be hampered by production issues that would further delay the project, reduce production volumes, and damage the Company's relationship with customers;

(c) that the Company was internally projecting reduced production levels and income for 2025; and

(d) that the cost of the Plaquemines Project was substantially in excess of the amounts listed in the Registration Statement – total cost of $23.3 billion-$23.8 billion.

25. By the time of the IPO, Venture Global had completed its fourth fiscal quarter of 2024. The Company's fourth quarter and year end results, however, were not provided in the Registration Statement. The omission of this information was material as the Company's fourth quarter financial performance was worse than the market expected and, therefore, would have revealed that the Company's future earnings and prospects were far more risky than portrayed in the Registration Statement.

26. The Registration Statement purported to detail "Risk Warnings" about Venture Global and its operations. These risk warnings were insufficient because, at the time of the IPO, the Company's fourth quarter had been complete for almost a month and, accordingly, warning about hypothetical risks, when in fact some of those risks had already materialized, was materially misleading.

27. The IPO was successful for the Company and the Underwriter Defendants, who sold 70 million shares of Venture Global common stock to the public at $25 per share, raising $1.75 billion in gross proceeds.

28. On March 6, 2025, before the market opened, Venture Global issued a press release announcing the Company's financial results for the fourth quarter and the year ended December 31, 2024. News reports highlighted that the Company posted earnings per share of $0.33 on

revenue of $1.52 billion, which missed the average analyst estimate of $0.76 per share on revenues of $1.92 billion, that sales unexpectedly fell 6.7% year-over-year in the period, and that the Company had substantially increased its cost estimates for the Plaquemines Project.

29. On March 6, 2025, the price of Venture Global stock fell from $14.20 per share to $9.08 per share on extremely heavy trading volume.

30. As of the date of this filing, Venture Global stock trades at a price substantially less than the IPO price.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action on behalf of a class consisting of all those who purchased Venture Global common stock pursuant and/or traceable to the Registration Statement issued in connection with the IPO (the "Class"). Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Venture Global or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether defendants violated the Securities Act;

    (b) whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

    (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

### For Violation of §11 of the Securities Act
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation set forth above.

38. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

39. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

40. Defendant Venture Global is strictly liable to plaintiff and the Class for the misstatements and omissions.

41. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

42. By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

43. Plaintiff acquired Venture Global common stock pursuant to the IPO.

44. Plaintiff and the Class have sustained damages. The value of Venture Global common stock has declined substantially subsequent to and due to defendants' violations.

45. At the time of their purchases of Venture Global common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

## COUNT II

### For Violation of §12(a)(2) of the Securities Act
### Against the Underwriter Defendants

46. Plaintiff repeats and realleges each and every allegation set forth above.

47. This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against the Underwriter Defendants.

48. The Underwriter Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Prospectus and Registration Statement.

49. As set forth above, the Prospectus and Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. The Underwriter Defendants' actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors.

50. The Underwriter Defendants owed to the purchasers of Venture Global common stock, including plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus and Registration Statement to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact. The Underwriter Defendants, in the exercise of reasonable care, should have known that the Prospectus and Registration Statement contained misstatements and omissions of material fact.

51. Plaintiff and the other members of the Class purchased Venture Global common stock pursuant to the Prospectus and Registration Statement, and neither plaintiff nor the other Class members knew, or in the exercise of reasonable diligence could have known, of the untruths, inaccuracies, and omissions contained in the Prospectus and Registration Statement.

52. Plaintiff, individually and on behalf of the Class, hereby offers to tender to the Underwriter Defendants those shares of common stock that plaintiff and the other Class members continue to own, in return for the consideration paid for those shares together with interest thereon. Class members who have sold their shares are entitled to rescissory damages.

## COUNT III

### For Violation of §15 of the Securities Act
### Against the Company and the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation set forth above.

54. This Count is brought pursuant to §15 of the Securities Act against the Company and the Individual Defendants.

55. The Individual Defendants each were control persons of Venture Global by virtue of their positions as directors and/or senior officers of Venture Global. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers of Venture Global. The Company controlled the Individual Defendants and all of Venture Global's employees.

56. Defendant Venture Global and the Individual Defendants each were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act alleged in the Counts above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Awarding rescission or a rescissory measure of damages; and

E. Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: April 15, 2025              THE OFFICE OF CRAIG C. REILLY, ESQ.
                                   CRAIG C. REILLY, VSB #20942


                                   /s/ Craig C. Reilly
                                   CRAIG C. REILLY
                                   209 Madison Street, Suite 501
                                   Alexandria, VA  22314
                                   Telephone: 703/549-5354
                                   703/549-5355 (fax)
                                   craig.reilly@ccreillylaw.com

                                   ABRAHAM, FRUCHTER & TWERSKY, LLP
                                   JACK G. FRUCHTER
                                   450 7th Avenue, 38th Floor
                                   New York, NY  10123
                                   Telephone: 212/279-5050
                                   212/279-3655 (fax)
                                   jfruchter@aftlaw.com

                                   Attorneys for Plaintiff