# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>VENTURE GLOBAL, INC., MICHAEL SABEL, JONATHAN THAYER, ROBERT PENDER, SARAH BLAKE, SARI GRANAT, ANDREW OREKAR, THOMAS J. REID, JIMMY STATON, RODERICK CHRISTIE, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, AND BofA SECURITIES, INC.,<br><br>       Defendants. | Case No. 1:25-cv-00633-CMH-LRV |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................................................4

      A.      Venture Global Conducts Its Initial Public Offering In New York .........................4

      B.      The SDNY Action And Lead Plaintiff Motions Are Filed In New York ................5

      C.      The Second Action Is Filed In An Attempt To Forum Shop ..................................6

      D.      Plaintiffs Voluntarily Dismiss The SDNY Action.................................................7

LEGAL STANDARD.................................................................................................................8

ARGUMENT.............................................................................................................................8

      A.      The Second Action Could Have Been Brought In New York ................................8

      B.      The Interest Of Justice And Convenience Of The Parties And Witnesses Weigh In Favor Of Transfer .................................................................................10

CONCLUSION........................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Atlanta Channel, Inc. v. Solomon*,
2020 WL 3513700 (E.D. Va. Jun. 29, 2020) ...........................................................................10

*Bascom Rsch., LLC v. Facebook, Inc.*,
2012 WL 12918407 (E.D. Va. Dec. 11, 2012) .......................................................................17

*Bowes v. Venture Global, Inc., et al.*,
No. 1:25-cv-01364 (S.D.N.Y. Feb. 17, 2025)............................................................................1

*Byerson v. Equifax Info. Servs., LLC*,
467 F. Supp. 2d 627 (E.D. Va. 2006) ...............................................................................10, 14

*France v. Bernstein*,
2025 WL 350236 (E.D. Va. Jan. 30, 2025) ............................................................................11

*Garity v. Tetraphase Pharms. Inc.*,
2019 WL 2314691 (S.D.N.Y. May 30, 2019) ....................................................14, 15, 17, 18

*Gen. Tire & Rubber Co. v. Watkins*,
373 F.2d 361 (4th Cir. 1967) .................................................................................................13

*Global Tel Link Corp. v. Securus Techs., Inc.*,
2014 WL 860609 (E.D. Va. Mar. 5, 2014)............................................................................14

*In re Millennial Media, Inc. Sec. Litig.*,
2015 WL 3443918 (S.D.N.Y. May 29, 2015) ...........................................................2, 6, 12, 13

*LG Elecs. Inc. v. Advance Creative Comp. Corp.*,
131 F. Supp. 2d 804 (E.D. Va. 2001) ...................................................................................10

*Meza v. Procter & Gamble Co.*,
2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......................................................................13

*Moore v. Sirounian*,
2020 WL 5791090 (E.D. Va. Jul. 20, 2020).......................................................................8, 17

*Newbauer v. Jackson Hewitt Tax Serv. Inc.*,
2019 WL 1398172 (E.D. Va. Mar. 28, 2019)....................................................................11, 12

*Newman v. Advanced Tech. Innovative Corp.*,
2012 WL 1414859 (E.D. Va. Apr. 20, 2012) ........................................................................18

*Pragmatus AV, LLC v. Facebook, Inc.*,
    769 F. Supp. 2d 991 (E.D. Va. 2011) ................................................................................16, 17

*Ross v. Davis*,
    74 F. Supp. 3d 231 (D.D.C. 2014) ..............................................................................................12

*S.E.C. v. Unifund SAL*,
    910 F.2d 1028 (2d Cir. 1990)........................................................................................................9

*Samsung Elecs. Co. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) .................................................................10, 12, 13, 15

*StrikeForce Technologies, Inc. v. Secureauth Corp.*,
    2017 WL 8809781 (E.D. Va. Jun. 9, 2017) ...................................................................... *passim*

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
    2003 WL 22387598 (N.D. Cal. Oct. 14, 2003)................................................................11, 13

**STATUTES**

15 U.S.C.
    § 77v(a) ...........................................................................................................................................8
    § 77z-1(a)(3)(A)..............................................................................................................................5
    § 77z-1(a)(3)(B)(iii)(I) ...................................................................................................................5
    § 77z-1(a)(3)(B)(v) .........................................................................................................................5

28 U.S.C. § 1404(a) ............................................................................................................................8

Defendants Venture Global, Inc. ("Venture Global"), Michael Sabel, Jonathan Thayer, Robert Pender, Sarah Blake, Sari Granat, Andrew Orekar, Thomas J. Reid, Jimmy Staton, Roderick Christie, Goldman Sachs & Co. LLP, J.P. Morgan Securities LLC, and BofA Securities, Inc. (collectively, "Defendants") respectfully move to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1404(a).

## **PRELIMINARY STATEMENT**

This case should be transferred to the United States District Court for the Southern District of New York ("SDNY"), where a nearly identical case was filed two months earlier asserting the same securities law claims based on the same initial public offering ("IPO") on the New York Stock Exchange.  *See Bowes v. Venture Global, Inc., et al.*, No. 1:25-cv-01364 (S.D.N.Y Feb. 17, 2025) (ECF No. 1) (the "SDNY Action").  The case before this Court, filed on April 15, 2025 (the "Second Action"), is merely the vehicle certain parties are using to try to forum-shop their way out of New York.

The following sequence of events is undisputed:

- February 17, 2025:  The SDNY Action was filed asserting claims under the Securities Act of 1933 ("Securities Act") against Venture Global and certain of its directors and officers on behalf of a putative class who purchased Venture Global stock in its IPO.  *See* SDNY Action, ECF No. 1 ("SDNY Compl.").

- February 17–April 18, 2025:  Starting the day the SDNY Action was filed, as required by federal law, the plaintiff in the SDNY Action published notice of the SDNY Action, and over the next two months nearly twenty law firms issued more than 140 press releases advertising the SDNY Action to purchasers of Venture Global stock and potential class members.  *See* Ex.[1] 1 (L&K press release); Ex. 3 (press release compilation).

- April 15, 2025:
  - o Plaintiff FirstFire Global Opportunities Fund LLC ("FirstFire Global") filed the Second Action in this Court asserting the same Securities Act claims against the same defendants as the SDNY Action, and adding three New York-based underwriters of

---

[1] Exhibits ("Ex." or "Exs.") refer to the exhibits attached to the Declaration of Stephen P. Barry ("Barry Decl."), filed herewith.

Venture Global's IPO.  *See* Second Action, ECF No. 1 ("Second Action Compl.").

o The Second Action was also brought on behalf of the same putative class as the SDNY Action.  *Compare* SDNY Compl. ¶ 29, *with* Second Action Compl. ¶ 31.

o Plaintiff FirstFire Global failed to disclose that there was already a related action pending in the SDNY as required when filing the Second Action.  *See* Second Action, ECF Nos. 1-2.

• April 18, 2025:

o Illinois Municipal Retirement Fund ("IMRF") filed a motion in the SDNY Action seeking appointment as lead plaintiff and appointment of its counsel, Labaton Keller Sucharow ("Labaton"), as lead counsel to represent a class of investors in the SDNY Action.  SDNY Action, ECF No. 21 at 5-9.  IMRF/Labaton indicated their readiness to "vigorously prosecut[e]" the SDNY Action, *id.* at 2, and did not inform the court of any view that the case should not be litigated in the SDNY or that it should be litigated in this Court.

o On the same day, IMRF/Labaton also filed a motion for appointment as lead plaintiff/counsel in this Second Action.  *See* ECF Nos. 3-5.

• April 24, 2025

o 1:35 PM:  Venture Global informed the parties to this Second Action that it would seek to transfer it to the SDNY so that it could be consolidated with the first-filed SDNY Action.  *See* Ex. 4 (Venture Global notice).

o 2:47 PM:  In response, IMRF/Labaton—which six days prior had filed motion to be appointed as lead plaintiff/counsel in the SDNY Action—announced for the first time that it was now opposed to litigating this case in New York.  *Id.*

o 4:47 PM:  Exactly two hours later, the plaintiff who filed the SDNY Action voluntarily dismissed the SDNY Action, which plaintiffs' law firms had spent months advertising to potential class members, and which Labaton had represented it would "vigorously prosecut[e]," so that IMRF/Labaton could take the position in this Court that the Second Action was now the only action pending.  *See* SDNY Action, ECF No. 41; *see also* Second Action, ECF No. 20.

In short, having expressly sought to litigate this case in New York, having publicly advertised the SDNY Action to solicit other investors as potential lead plaintiffs, and having made express representations in their lead plaintiff/lead counsel application about their suitability and readiness to vigorously pursue the action in the SDNY, the likely lead plaintiff and counsel have now decided that New York is not a favorable forum for them and oppose a transfer there.

The reason for this abrupt about-face is clear: the party likely to be appointed lead plaintiff (*i.e.*, IMRF) wants the case to be heard by a different judge because its proposed lead counsel

2

(Labaton) was publicly reprimanded in a lengthy decision by the judge assigned to the SDNY Action based on the firm's conduct in another securities case. *See In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *5-10 (S.D.N.Y. May 29, 2015) (Engelmayer, J.). That is not a legitimate basis to keep the action here. On the contrary, this Court has made clear that "attempts to manipulate the federal system through forum shopping" are precisely the sort of conduct that warrants transfer. *StrikeForce Technologies, Inc. v. Secureauth Corp.*, 2017 WL 8809781, at *2 (E.D. Va. Jun. 9, 2017) (Hilton, J.) (transferring a patent case to the Northern District of California).

Even looking past the forum-shopping effort, the other factors that courts consider under the relevant statute, 28 U.S.C. § 1404(a), all plainly point to the SDNY, where the IPO that is the subject of this lawsuit occurred and where many of the Defendants, non-parties, and sources of proof can be found. *StrikeForce*, 2017 WL 8809781, at *1-2. Venue is proper there and the court has personal jurisdiction over all the parties in New York. New York is also more convenient for the parties and non-parties alike, given that five of the Defendants and 16 of the 21 underwriters involved in Venture Global's IPO are based in New York (and none of the underwriters are located in Virginia).

Although Venture Global itself is a Virginia-based company, it routinely does business in New York—including the IPO at issue here—and has an interest in the litigation being conducted in the forum that is most efficient for its New York-based directors and underwriters, to whom it owes indemnification obligations for the costs of defending certain claims arising out of the IPO. The underwriters named as Defendants likewise have a strong interest in litigating this case in New York, where the vast majority of their work supporting the IPO was performed.

In contrast, the law is clear that a non-resident plaintiff's choice of forum in a class action

3

is entitled to almost no deference.  Indeed, the putative lead plaintiff, IMRF (an Illinois-based pension fund) and the putative lead counsel, Labaton (a New York-based law firm), themselves previously advocated to lead the case in New York and have no offices in Virginia.

In sum, the various plaintiffs and lead plaintiff movants had it right the first time: the SDNY is the most appropriate forum for this lawsuit, and the Court should transfer this case back to the first-filed court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Venture Global Conducts Its Initial Public Offering In New York

Venture Global is an energy company that "has fundamentally reshaped the development and construction of liquefied natural gas [LNG] production," using an innovative approach that enables it to "bring LNG to a global market years faster and at a lower cost" than competitors.  *See* Second Action Compl. ¶¶ 18, 20.  At present, Venture Global has multiple LNG projects in various stages of development, all located on the United States Gulf Coast in Louisiana.  *Id.* ¶ 19.

On January 24, 2025, Venture Global executives traveled to New York and conducted its IPO, and its Class A common stock began trading on the New York Stock Exchange under the symbol "VG."  *See id.* at ¶ 16.[2]  Venture Global's IPO was facilitated via a group of 21 financial institutions that served as "underwriters" for the offering.  *See id.* ¶ 13.  Sixteen of those 21 entities are based in New York, including all of the institutions named as Defendants in the Second Action.  *See* Ex. 5 (FINRA Broker Check summaries).  None is based in Virginia.

---

[2] *See also* New York Stock Exchange (@NYSE), TWITTER (Jan. 24, 2025, 5:31 p.m.), https://x.com/NYSE/status/1882919117088260111 (showing Venture Global management team at New York Stock Exchange for IPO).

**B.**       **The SDNY Action And Lead Plaintiff Motions Are Filed In New York**

On February 17, 2025, plaintiff Gerald Bowes filed the SDNY Action against Venture Global and several of its officers and directors (the "Individual Defendants"), alleging on behalf of a putative class of shareholders that the offering materials for the IPO were incomplete and therefore violated Sections 11 and 15 of the Securities Act. *Id.* ¶ 1. Mr. Bowes asserted that "[v]enue is proper in" the SDNY pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) "because certain of the acts alleged herein, including the commencement and execution of Venture's initial public offering, occurred in this District." *Id.* ¶ 9. The case was assigned to Judge Paul A. Engelmayer. *See* SDNY Action Dkt.

Because the SDNY Action asserted claims under the federal securities laws, the Private Securities Litigation Reform Act ("PSLRA") required Mr. Bowes and his counsel to publish notice to potential class members of the pendency of the SDNY Action describing the claims asserted, the purported class period, and the April 18, 2025 deadline to file a motion to serve as lead plaintiff. 15 U.S.C. §77z-1(a)(3)(A). Over the next two months, nearly twenty law firms published in excess of 140 press releases advertising the SDNY Action and soliciting potential plaintiffs. *See* Ex. 3 (press release compilation).

On April 18, 2025, seven motions were filed in the SDNY Action seeking appointment as lead plaintiff and appointment of their counsel as lead counsel, including one by IMRF and its counsel, Labaton. *See* SDNY Action, ECF Nos. 11-36. In support of their motion, IMRF/Labaton made extensive representations about their readiness and suitability to "vigorously prosecut[e]" the SDNY Action—citing numerous decisions by New York federal courts to suggest that IMRF was the "most adequate plaintiff" with "the sophistication and resources necessary to effectively litigate" the SDNY Action. *See* SDNY Action, ECF No. 21 at 2, 8-9. IMRF and Labaton gave no indication to the court of their unreadiness or unwillingness to pursue the case in New York.

The PSLRA also provides that the investor with the "largest financial interest" in the outcome of the litigation should generally be appointed lead plaintiff, with their selected counsel then appointed lead counsel, subject to court approval.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) & (a)(3)(B)(v).  Based on the motions filed and the magnitude of the losses alleged by IMRF in comparison to the other putative lead plaintiffs, it appeared likely that IMRF would be appointed as lead plaintiff and its counsel, Labaton, would be appointed as lead counsel.  *See* SDNY Action, ECF No. 21.

The SDNY Action is not Labaton's first appearance before Judge Engelmayer (the judge assigned to the SDNY Action).  In a prior securities class action where, like here, Labaton represented a putative class of investors,  Judge Engelmayer issued a lengthy decision expressing concerns about, among other things, Labaton's improper use of confidential witness testimony by the defendant's former employees, stating that Labaton's conduct "sits at best uneasily alongside Federal Rule of Civil Procedure 11."  *Millennial Media*, 2015 WL 3443918, at *11.

C.      **The Second Action Is Filed In An Attempt To Forum Shop**

On April 15, 2025—nearly two months after the SDNY Action was filed, and after nearly twenty law firms advertised the pendency of the case in that forum to potential class members— plaintiff FirstFire Global, a New York-based investment fund, filed the Second Action in this Court. Second Action Compl., ECF No. 1.  Like the SDNY Action, the Second Action relates to Venture Global's IPO and asserts the same violations of the Securities Act on behalf of the same putative class, challenging the same statements in the offering materials for Venture Global's IPO, and adding a few words about Venture Global's intervening earnings announcement.  *Compare* SDNY Compl. ¶¶ 1, 23-24, *with* Second Action Compl. ¶¶ 1, 18-24.  The main difference is that the Second Action adds as Defendants three New York-based investment banks that served as underwriters of Venture Global's

IPO—Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, and BofA Securities, Inc. (collectively, the "Underwriter Defendants"). *See* Second Action Compl. ¶ 13.

Three lead plaintiff motions were filed in this Second Action, all by putative lead plaintiffs who had also filed substantially similar motions in the SDNY Action—including IMRF. *See* Second Action, ECF Nos. 3-5, 7-13. As discussed, based on the factors specified by the PSLRA and considered by courts evaluating lead plaintiff and lead counsel applications, it appears likely that IMRF has the largest financial interest in the outcome of the litigation and will be appointed as lead plaintiff with its counsel, Labaton, will be appointed as lead counsel.[3] *See* Second Action, ECF Nos. 20, 24.

**D.    Plaintiffs Voluntarily Dismiss The SDNY Action**

On April 24, 2025, Venture Global informed all parties in this Second Action that it would seek to transfer the later-filed Second Action to the SDNY and then seek consolidation with the first-filed SDNY Action. *See* Ex. 4 (Venture Global notice). Although IMRF and Labaton had previously argued at length why they should be appointed as lead plaintiff and lead counsel, respectively, in the SDNY Action and made no suggestions that they preferred to litigate the case in Virginia (*see* SDNY Action, ECF No. 21), they suddenly had a change of heart. With their motions for appointment in the SDNY Action still pending, IMRF/Labaton and one other lead plaintiff movant indicated that they

---

[3] A second member of the putative class, Pompano Beach Police & Firefighters' Retirement System ("Pompano Beach"), and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), filed a motion opposing IMRF/Labaton's appointment and requesting that the Court appoint them instead. *See* Second Action, ECF No. 8. Like IMRF/Labaton, Pompano Beach/RG also sought to be appointed lead plaintiff/counsel in the SDNY Action, *see* SDNY Action, ECF Nos. 15-17, and Robbins Geller even issued a press releases advertising the SDNY Action and soliciting potential clients to apply to become lead plaintiff. Ex. 2 (Robbins Geller press releases). Like IMRF/Labaton, Pompano Beach and Robbins Geller have no connection to the Eastern District of Virginia—Pompano Beach is based in Florida and the Robbins Geller attorneys who seek appointment as lead counsel are located in New York and California. *See* Second Action, ECF No. 8. Defendants take no position on who should be appointed lead plaintiff and lead counsel. However, to the extent the Court is considering Pompano Beach/Robbins Geller, their newfound desire to avoid the SDNY and their lack of any connection to the Eastern District of Virginia raise the same forum-shopping concerns as for IMRF/Labaton and the analysis of the transfer factors is no different.

were opposed to litigating in the SDNY and would oppose any transfer motion.  *See* Ex. 4 (Venture Global notice).

Two hours later the plaintiff in the SDNY Action filed a notice of voluntary dismissal—notwithstanding the pendency of multiple lead plaintiff motions in that action, and without giving notice to potential class members.  *See* SDNY Action, ECF No. 41.  After learning of these unusual maneuvers, Judge Engelmayer noted that he did not have the power to retain the case given the voluntary dismissal, but would "await[] the Eastern District of Virginia's resolution of the forthcoming motion to transfer venue" of this Second Action.  *See* SDNY Action, ECF No. 44.

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides that, "for the convenience of [the] parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The decision to transfer venue rests within the sound discretion of the court." *StrikeForce*, 2017 WL 8809781, at *1.  In determining whether to transfer, this Court has explained that the "threshold question is whether the action could have originally been brought in the transferee forum." *Id.*  If so, then the Court considers "four factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Id.*  All of these factors weigh heavily in favor of transferring this case to New York.

## ARGUMENT

### A.    The Second Action Could Have Been Brought In New York

Whether an action could have been brought in the transferee forum depends on whether: (1) venue is proper in the transferee forum and (2) defendants are subject to personal jurisdiction there. *See Moore v. Sirounian*, 2020 WL 5791090, at *3 (E.D. Va. Jul. 20, 2020).  Here, there is

no question that this Second Action could have been brought in the SDNY, as it is nearly identical to the SDNY Action that was already filed there months earlier.

*First*, venue is proper in SDNY because all Defendants either reside or transact business in New York (or both). *See* 15 U.S.C. § 77v(a) ("[T]o enforce any liability or duty created by [the Securities Act] or rules and regulations thereunder, . . . [a]ny such suit or action may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business."). As the SDNY Action complaint correctly alleged, "[v]enue is proper in [the SDNY] . . . because certain of the acts alleged herein, including commencement and execution of Venture [Global's] initial public offering, occurred in this District." SDNY Compl. ¶ 9. The Underwriter Defendants all maintain their principal place of business in New York. *See* Barry Decl. ¶ 4 & Ex. 5 (FINRA Broker Check summaries). Two of the Individual Defendants, Venture Global outside directors, also reside in New York.[4] *See* Barry Decl. ¶ 3. And while Venture Global and the remaining Individual Defendants reside elsewhere, they clearly transact business in New York as evidenced by, among other things, Venture Global's recent IPO on the New York Stock Exchange, which is the subject of both the SDNY Action and this Second Action.

*Second*, the SDNY has personal jurisdiction over all Defendants. Again, the Underwriter Defendants reside in New York and the remaining Defendants either reside in New York or directed activity towards New York in connection with Venture Global's IPO and are therefore subject to personal jurisdiction there. *See S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (finding personal jurisdiction based on minimum contacts with United States in the form of activity directed at the New York Stock Exchange); *see also* SDNY Compl. ¶ 8.

---

[4] Defendants Thomas Reid and Sari Granat reside in the SDNY and Defendants Sarah Blake, Robert Pender and Jonathan Thayer reside in the Eastern District of Virginia. The remaining Individual Defendants do not reside in either district or, in the case of Roderick Christie, the United States of America. *See* Barry Decl. ¶ 3.

9

**B.      The Interest Of Justice And Convenience Of The Parties And Witnesses Weigh In Favor Of Transfer**

Having satisfied the threshold requirement that this Second Action could have been brought in the SDNY, the Court next considers (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *StrikeForce*, 2017 WL 8809781, at *1.

Although each of these factors weighs strongly in favor of transfer here, courts in this district have repeatedly held that the "interest of justice" prong is paramount and "may be decisive in ruling on a transfer motion." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006); *see also Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 711 (E.D. Va. 2005) (same). Because of the forum-shopping at play, the interest of justice factor weighs especially heavily in favor of the first-filed forum.

**1.      The Interest Of Justice Favors Transfer To New York**

When evaluating the "interest of justice," courts examine "judicial economy, the potential for inconsistent results, and attempts to manipulate the federal system through forum-shopping." *StrikeForce*, 2017 WL 8809781, at *2. This prong is "primarily concerned with systemic integrity and fairness," *id.,* and applies with particular force where, as here, denial of a transfer motion would reward a "blatant display of forum manipulation." *Samsung*, 386 F. Supp. 2d at 723.

*First*, there is no dispute that the SDNY Action was the first-filed case and that the claims were nearly identical to those asserted in the Second Action. There is no small irony in the fact that the main difference between the two cases is that the Second Action ***added*** three New York-based Defendants. Where related actions are pending in separate districts, courts typically transfer later-filed cases to the forum of the first-filed suit. *See, e.g., Atlanta Channel, Inc. v. Solomon*, 2020 WL 3513700, at *2-3 (E.D. Va. Jun. 29, 2020) (Hilton, J.) (transferring case to venue where

10

parties were already litigating two related lawsuits). This is true even where the earlier-filed action is no longer pending, but the transferee court is "familiar[] with the applicable law." *LG Elecs. Inc. v. Advance Creative Comp. Corp.*, 131 F. Supp. 2d 804, 814-15 (E.D. Va. 2001) (transferring case where party has "previously litigated" claims in transferee forum and transferee court was already familiar with the case). Here, the SDNY Action was pending for two months and advertised by nearly twenty law firms more than 140 times. The court overseeing that action, in response to the lead plaintiff applications in which applicants stated their intention to vigorously prosecute the matter in that court, set a schedule for progressing those motions, amending the pleadings, and filing motions to dismiss. *See* SDNY Action, ECF Nos. 10, 37.

The rule favoring transfer to the first-filed court, even where the first-filed action is no longer pending, applies with special force where (as here) a plaintiff commences a lawsuit and fails to disclose the earlier-filed action:

> Dismissal, followed by the reinstitution of a case to avoid a particular judge or precedent, is exactly the kind of forum shopping anticipated and expressly prohibited by local rules of many districts. . . .  Plaintiff here appears to have taken its forum shopping one step further, attempting to avoid the rigid local rules by filing for the same group of plaintiffs with differently named representatives. It apparently had hoped that the court would overlook the essentially identical [] case that was then pending in another district. It neglected to notify this court that the instant case has had a twin in [another district] as required . . . .

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003) (internal citations omitted); *see also France v. Bernstein*, 2025 WL 350236, at *7 (E.D. Va. Jan. 30, 2025) (ordering transfer so as not to encourage "tactical maneuvers" by plaintiff who sought to avoid Third Circuit law and who failed to disclose a prior, related case).

Plaintiffs' failure to disclose to this Court a nearly identical, first-filed action is precisely what happened here. *See* Second Action, ECF Nos. 1-2 (failing to disclose any related case as

11

required by Civil Cover Sheet JS 44, Part VIII).[5]  Plaintiffs and the various lead plaintiff movants should not be able to escape the effect of the first-filed principle because of a strategic decision to avoid what they perceive to be an unfavorable forum in the first-filed court.  *See France*, 2025 WL 350236, at \*7; *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, 2019 WL 1398172, at \*13 (E.D. Va. Mar. 28, 2019) (transferring action to forum of first-filed case, even though plaintiff voluntarily dismissed that case because "[i]t is apparent from the procedural history of this case that plaintiffs' choice to file here was at least partly motivated by forum-shopping"); *Ross v. Davis*, 74 F. Supp. 3d 231, 239 (D.D.C. 2014) (accepting allegation in first-filed suit "establishing the propriety of venue" in first forum and "return[ing] the [second] suit to that district" even though first suit was voluntarily dismissed).

*Second*, and as a corollary, denying this transfer motion would reward the maneuvers by the plaintiffs and putative lead plaintiff movants to avoid a particular judge.  The SDNY Action was pending for more than two months, and seven groups filed lead plaintiff/counsel motions there.  These included IMRF and Labaton, who argued at length why they should be appointed lead plaintiff and lead counsel, respectively, in the SDNY Action.  Only after it became clear that they were likely to be appointed as lead because IMRF maintains the "largest financial interest" in the claims, and that Venture Global would seek to consolidate the two related actions in the forum of the first-filed action—where IMRF's counsel, Labaton, had previously been reprimanded by the assigned judge—did they suddenly become keen to litigate in Virginia.  By "alter[ing] its position drastically in an effort to dictate" where litigation would proceed, IMRF makes clear that it "acted as it did for one purpose: to avoid litigating in" the SDNY.  *Samsung*, 386 F. Supp. 2d at

---

[5] The Virginia attorney who filed this action on behalf of FirstFire and failed to disclose the earlier-filed SDNY Action is now "liaison counsel" to lead plaintiff movant Pompano Beach. *Compare* Second Action, ECF No. 1, *with* ECF No. 8.

12

723 (denying transfer because moving party, after being content to litigate in one forum, suddenly changed position in favor of another forum).

That Illinois-based IMRF and New York-based Labaton are apparently eager to land in a forum other than the first-filed court is hardly surprising. In a prior securities class action before Judge Engelmayer, the judge assigned to the SDNY Action, it came to light that Labaton had filed a complaint that attributed numerous statements to confidential witnesses that were demonstrably inaccurate. *See Millennial Media*, 2015 WL 3443918, at *5-10. As Judge Engelmayer explained:

> [t]his is not a case of merely isolated or immaterial differences between a Complaint and the declarations of a recanting witness, deficiencies which, although regrettable, do not fundamentally affect the integrity of a Complaint. . . . The deficiencies reported by the [former employees] here are pervasive. And they run a gamut: They infect statements of major as well as minor importance; and they involve statements that witnesses denied making, statements that were made but which the FAC presented out of context, and statements of knowledge or opinion for which the witness lacked a factual basis.

*Id.* at *10 (internal citations omitted). After a detailed review of Labaton's practices in speaking with so-called "confidential witnesses," Judge Engelmayer concluded that "[t]he practice revealed by this case, in which plaintiffs' counsel makes literally no attempt to confirm the quotes of a witness on whom counsel proposes to rely in a public filing, sits at best uneasily alongside Federal Rule of Civil Procedure 11." *Id.* at *11. Although the court ultimately declined to impose sanctions, *id.* at n.11, this history makes clear why IMRF and its counsel are eager to land in a forum other than the SDNY where they once sought to lead this case.

"Plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily in favor of transfer and would often make the transfer proper" standing alone. *Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *3, 6 (C.D. Cal. Apr. 27, 2023) (quoting *Wireless*, 2003 WL 22387598, at *5). On this record, an order declining to "transfer this case would be to permit . . . a most blatant display of forum manipulation," *Samsung*, 386 F. Supp. 2d at 723, by allowing

13

plaintiffs to file cases in multiple jurisdictions, wait to see which judges are assigned and which parties are likely to be appointed lead plaintiff/lead counsel, and then dismiss where they do not like the results. The interest of justice does not condone rewarding such behavior. *See Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 369 (4th Cir. 1967) ("[F]orum shopping must not be indulged in the face of multiple litigation[s] especially where, as here, the shopper is offered an equally convenient forum.").

### 2. Plaintiffs' Choice Of Forum Is Entitled To Virtually No Deference

Unlike in individual actions, a plaintiff's choice of forum is given almost no weight in typical class actions. That is because in class actions, "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Byerson*, 467 F. Supp. 2d at 633 (citation omitted). Particularly in securities class actions, "courts afford little weight to a plaintiff's choice of forum" because stockholders in the putative class are dispersed throughout the country. *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *2 (S.D.N.Y. May 30, 2019) (collecting cases).

Likewise, neither the New York-based plaintiff who filed the Second Action (FirstFire Global) nor the presumptive lead plaintiff (IMRF) are at home in Virginia and the case is not closely connected to this District because "the alleged [purchases of securities at issue] occurred nationwide," on a New York-based stock exchange—all of which counsel against affording weight to plaintiffs' choice of forum. *StrikeForce*, 2017 WL 8809781, at *1 (holding that plaintiff's forum choice is "not entitled to substantial weight" where plaintiff resides elsewhere and alleged violations occurred throughout the country). This is particularly true here where the presumptive lead plaintiff and its counsel previously advocated to lead the case in New York before changing course and declaring that they prefer Virginia.

14

In any event, where (as here) plaintiff's choice of forum is entitled to little or no weight, Defendants are "well on their way to meeting their burden [for transfer]" because in the context of a class action, the typical weight given to a plaintiff's choice of forum "has been removed." *Global Tel Link Corp. v. Securus Techs., Inc.*, 2014 WL 860609, at *5 (E.D. Va. Mar. 5, 2014) (quotations omitted).

### 3.      The Relevant Witnesses Are Located In New York

Convenience and access to witnesses weigh strongly in favor of transfer to the SDNY. Although Venture Global is headquartered in Arlington, Virginia, the offering materials for Venture Global's IPO explain that all of its LNG production operations are currently located in southern Louisiana.  Ex. 6 (Registration Statement) at 1-2.  More importantly, to the extent testimony is required from Venture Global's more senior, officer-level personnel based in Virginia, the filing of this motion makes clear that those individuals are "presumed to be more willing to testify in a different forum," *Samsung*, 386 F. Supp. 2d at 718 (citations omitted), because "parties can waive the issue of their own convenience, in which case it is given no consideration in the analysis," *Garity*, 2019 WL 2314691, at *3 (citations omitted).[6]

On these facts, a key driver for deciding the most convenient forum is the composition of the defense group as a whole and the location of both party and non-party witnesses.  Two of the Defendants in this matter are outside directors for Venture Global who live in New York.  Also based in New York are the financial institutions that served as underwriters for Venture Global's IPO, and to whom Venture Global owes indemnity obligations for the costs of defending certain

---

[6] On April 25, 2025, IMRF made  a submission to this Court apparently intended to anticipate this motion to transfer.  *See* Second Action, ECF No. 20.  In it, IMRF cites *Garity* as one of just two cases for the point that officers and employees of Venture Global would be key witnesses.  *Id.* at 2.  But IMRF ignores the very next paragraph of the decision, which explains "Plaintiff cannot defeat transfer based on the purported convenience of . . . employees where [their employers] seek transfer themselves." *Garity*, 2019 WL 2314691, at *3 (transferring case).

claims in connection with the IPO. Although FirstFire Global sued only three underwriters, a total of 21 underwriters participated in the IPO, *see* Ex. 6 (Registration Statement) at 289, and the overwhelming majority of them are based in New York. Of the 18 underwriters who are non-parties, 13 are based in New York and none is based in Virginia, as reflected in the table below.

| IPO Underwriters | Location |
| --- | --- |
| Defendant Goldman Sachs & Co. LLC | New York, NY |
| Defendant J.P. Morgan Securities LLC | New York, NY |
| Defendant BofA Securities, Inc. | New York, NY |
| Non-Party ING Financial Markets LLC | New York, NY |
| Non-Party RBC Capital Markets, LLC | New York, NY |
| Non-Party Scotia Capital (USA) Inc. | New York, NY |
| Non-Party Mizuho Securities USA LLC | New York, NY |
| Non-Party Santander US Capital Markets LLC | New York, NY |
| Non-Party SMBC Nikko Securities America, Inc. | New York, NY |
| Non-Party MUFG Securities Americas Inc. | New York, NY |
| Non-Party BBVA Securities Inc. | New York, NY |
| Non-Party Loop Capital Markets LLC | Chicago, IL |
| Non-Party Natixis Securities Americas LLC | New York, NY |
| Non-Party Deutsche Bank Securities Inc. | New York, NY |
| Non-Party Wells Fargo Securities, LLC | Charlotte, NC |
| Non-Party Truist Securities, Inc. | Atlanta, GA |
| Non-Party National Bank of Canada Financial Inc. | New York, NY |
| Non-Party Raymond James & Associates, Inc. | St. Petersburg, FL |
| Non-Party Regions Securities LLC | Atlanta, GA |
| Non-Party Guggenheim Securities, LLC | New York, NY |
| Non-Party Tuohy Brothers Investment Research, Inc. | New York, NY |

*See* Ex. 5 (FINRA Broker Check summaries). Among the three banks named as Underwriter Defendants, each had more than a dozen core team members working on the IPO and nearly every single one of these people was based in New York. *See* Barry Decl. ¶ 4 (explaining that other than two Houston, Texas-based employees, all other core team members were in New York). The lawyers who advised both Venture Global and the underwriters in connection with the IPO are also based in New York. *See* Ex. 6 (Registration Statement) at 299.

In sum, other than Venture Global's own employees—whose convenience is not a factor where Venture Global itself seeks transfer—it is not clear that there are any significant witnesses in this District because the overwhelming majority of such witnesses—particularly non-parties whose convenience is accorded more weight—are in the SDNY.  This strongly supports transfer. *See Pragmatus AV, LLC v. Facebook, Inc.,* 769 F. Supp. 2d 991, 996 (E.D. Va. 2011) (granting transfer where defendants "identified numerous potential witnesses and sources of evidence" in transferee district while plaintiff had "not identified a single non-party witness in or near" the original district); *Moore*, 2020 WL 5791090, at *4–5 (granting transfer where majority of relevant witnesses likely resided in transferee district); *Bascom Rsch., LLC v. Facebook, Inc.*, 2012 WL 12918407, at *2 (E.D. Va. Dec. 11, 2012) (granting motion to transfer where vast majority of non-party witnesses resided in transferee district, and plaintiff had not identified any non-party witnesses located in original district).

### 4.    New York Is The More Convenient Forum For The Parties

The relative convenience of the SDNY for the parties also counsels in favor of transfer. The plaintiff who filed the Second Action, FirstFire Global, is based in New York.  *See* Second Action, ECF No. 1–2.  Putative lead plaintiff IMRF is based in Illinois, so "Plaintiff will likely be flying to the forum regardless." *StrikeForce*, 2017 WL 8809781, at *2.

On the defense side, two of the Individual Defendants, both outside directors for Venture Global, live in New York.  All three Underwriter Defendants are based in New York.  Although Venture Global and three of the Individual Defendants are located in Virginia, these parties are all willing to participate in a New York-based litigation and thus their presence in Virginia cannot be the basis to deny transfer.  *See Garity*, 2019 WL 2314691, at *3.

Venture Global's desire to proceed in New York is entirely practical, given that, as disclosed in the offering documents for the IPO, Venture Global agreed to indemnify the

17

underwriters for the costs of defending against certain claims related to the IPO. Ex. 6 (Registration Statement) at 293.[7] Venture Global has a substantial interest in litigating in the venue that is most convenient (and, therefore, cost efficient) for the greatest number of Defendants. That Venture Global's documents may be located in Virginia is irrelevant—in the modern era, courts "give[] little weight to the location of such records since it appears they can easily be transmitted electronically." *Newman v. Advanced Tech. Innovative Corp.*, 2012 WL 1414859, at *3 (E.D. Va. Apr. 20, 2012); *see also Garity*, 2019 WL 2314691, at *3.

Finally, while the convenience of counsel is not typically considered on a motion to transfer, *see Garity*, 2019 WL 2314691, at *5, it appears that New York is actually the most convenient forum for counsel to both the current plaintiff (FirstFire Global) and the likely lead counsel (Labaton)—both of whom are based in New York. Indeed, before the SDNY Action was dismissed, IMRF moved to appoint Labaton as lead counsel with a team entirely based in New York, and that same New York-based team seeks approval as lead counsel here in Virginia. *See* SDNY Action, ECF No. 21 at 10; Second Action, ECF No. 4 at 1, 10.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court transfer this case to the United States District Court for the Southern District of New York.

Date: May 5, 2025

Respectfully submitted,

*/s/ Stephen P. Barry*
Stephen P. Barry (VA 81839)
Katherine A. Sawyer (*pro hac vice* forthcoming)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW

---

[7] In particular, Venture Global entered into an Underwriting Agreement with the Underwriter Defendants, all based in New York, pursuant to which the Underwriter Defendants would purchase shares in connection with an IPO on the New York Stock Exchange and which provided for indemnification and contribution provisions enforceable in the courts of New York and governed by New York law. Ex. 7 (Underwriting Agreement) at 2-3, 32.

18

Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
stephen.barry@lw.com
katherine.sawyer@lw.com

Jeff G. Hammel (*pro hac vice forthcoming*)
Jason C. Hegt (*pro hac vice forthcoming*)
Corey Calabrese (*pro hac vice forthcoming*)
Melange T. Gavin (*pro hac vice forthcoming*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
jeff.hammel@lw.com
jason.hegt@lw.com
corey.calabrese@lw.com
melange.gavin@lw.com

*Attorneys for Defendants Venture Global, Inc., Michael Sabel, Jonathan Thayer, Robert Pender, Sarah Blake, Sari Granat, Andrew Orekar, Thomas J. Reid, Jimmy Staton, and Roderick Christie*

*/s/ Patrick F. Stokes*
Patrick F. Stokes
Lissa M. Percopo (*pro hac vice* forthcoming)
Michael R. Dziuban (VA 89136)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500
pstokes@gibsondunn.com
lpercopo@gibsondunn.com
mdziuban@gibsondunn.com

Robert F. Serio (*pro hac vice* forthcoming)
Mary Beth Maloney (*pro hac vice* forthcoming)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
rserio@gibsondunn.com

19

mmaloney@gibsondunn.com

*Attorneys for Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, and BofA Securities, Inc.*

20