**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>   v.<br><br>VENTURE GLOBAL, INC., MICHAEL SABEL, JONATHAN THAYER, ROBERT PENDER, SARAH BLAKE, SARI GRANAT, ANDREW OREKAR, THOMAS J. REID, JIMMY STATON, RODERICK CHRISTIE, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, and BofA SECURITIES, INC.,<br><br>       Defendants. | Case No. 1:25-cv-00633-CMH-LRV |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.........................................................................................................................2

      A.     IMRF Concedes The Second Action Could Have Been Brought In New York ................................................................................................................2

      B.     The Interest Of Justice Favors Transfer To Discourage Forum Shopping ..............3

      C.     The Remaining Factors Favor Transfer .................................................................6

            1.     IMRF's Choice Of Forum Should Be Disregarded ....................................7

            2.     The SDNY Is The Most Convenient Forum For Parties And Witnesses ....................................................................................................8

            3.     More Parties Are Located In The SDNY......................................................11

CONCLUSION.....................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bascom Rsch., LLC v. Facebook, Inc.*,
2012 WL 12918407 (E.D. Va. Dec. 11, 2012) ...........................................................................9

*Byerson v. Equifax Info. Servs., LLC*,
467 F. Supp. 2d 627 (E.D. Va. 2006) ........................................................................................7

*De Ford v. Koutoulas*,
2024 WL 3851257 (M.D. Fla. Aug. 16, 2024) ..........................................................................7

*France v. Bernstein*,
2025 WL 350236 (E.D. Va. Jan. 30, 2025) ...............................................................................3

*Garity v. Tetraphase Pharms. Inc.*,
2019 WL 2314691 (S.D.N.Y. May 30, 2019) .......................................................................8, 11

*Gen. Tire & Rubber Co. v. Watkins*,
373 F.2d 361 (4th Cir. 1967) .....................................................................................................4

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
71 F. Supp. 2d 517 (E.D. Va. 1999) ..........................................................................................6

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,
2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008)..........................................................................9

*In re Millennial Media, Inc. Sec. Litig.*,
2015 WL 3443918 (S.D.N.Y. May 29, 2015) ...........................................................................2

*Jaffe v. LSI Corp.*,
874 F. Supp. 2d 499 (E.D. Va. 2012) ........................................................................................6

*Kattan v. Virginia Dep't of Environmental Quality*,
2021 WL 12256232 (E.D. Va. Dec. 22, 2021) ........................................................................10

*Koh v. Microtek Int'l, Inc.*,
250 F. Supp. 2d 627 (E.D. Va. 2003) ......................................................................................10

*LIOBMedia, LLC v. Dataflow/Alaska, Inc.*,
2007 WL 2109279 (E.D. Va. Jul. 17, 2017) .............................................................................7

*Lockhart v. Garzella*,
2020 WL 6146598 (S.D. Oh. Oct. 20, 2020)............................................................................7

*Manchin v. PACS Group Inc., et al.*,
  2025 WL 1276569 (S.D.N.Y. May 1, 2025) ..............................................................9, 10, 11

*Newbauer v. Jackson Hewitt Tax Serv. Inc.*,
  2019 WL 1398172 (E.D. Va. Mar. 28, 2019) ........................................................................3

*Original Ceatine Pat. Co. v. Met-Rx USA, Inc.*,
  387 F. Supp. 2d 564 (E.D. Va. 2005) ...................................................................................6

*Parchmann v. MetLife, Inc.*,
  2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018) .....................................................................7

*Phillips v. Churchill Capital Corp. IV*,
  2021 WL 11628687, (N.D. Ala. Dec. 1, 2021).....................................................................5

*Pragmatus AV, LLC v. Facebook, Inc.*,
  769 F. Supp. 2d 991 (E.D. Va. 2011) ...........................................................................5, 6, 9

*Samsung, Elecs. Co. v. Rambus, Inc.*,
  386 F. Supp. 2d 708 (E.D. Va. 2005) ...................................................................................5

*Snodgrass v. Richardson*,
  2024 WL 1260571 (E.D. Va. Mar. 25, 2024).......................................................................2

*Steck v. Santander Consumer USA Holdings Inc.*,
  2015 WL 3767445 (S.D.N.Y. June 17, 2025) ...................................................................8, 9

*StrikeForce Techs., Inc. v. Secureauth Corp.*,
  2017 WL 8809781 (E.D. Va. Jun. 9, 2017) .....................................................................7, 11

*Trs. of Columbia Univ. in City of New York v. Symantec Corp.*,
  2014 WL 1329417 (E.D. Va. Apr. 2, 2014) ........................................................................11

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
  2003 WL 22387598 (N.D. Cal. Oct. 14, 2003).....................................................................3

**STATUTES**

28 U.S.C. § 1404(a) ......................................................................................................................1

iii

**PRELIMINARY STATEMENT**

The Opposition ("Opposition" or "Opp") filed by Illinois Municipal Retirement Fund ("IMRF") in response to Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Motion" or "Mot.") only confirms why this action belongs in the SDNY.[1]

The plaintiff who filed this putative class action has said not one word in opposition to this motion to transfer. The only opposition to transfer was lodged by IMRF, whose lead plaintiff application is pending; no other plaintiffs have joined that filing. IMRF does not dispute that the Second Action could have been filed in the SDNY, where a substantively identical lawsuit was filed months earlier, and never explains why it wants to litigate here. Nor could it: IMRF itself is based in Illinois and has no ties to Virginia, its lead counsel (Labaton) is based in New York, as are most of the Defendants, and the few parties located in Virginia have consented to transfer given the savings to them of litigating in a forum more convenient for the other Defendants.

All of this undisputed evidence (plus additional undisputed evidence cited in the Motion) supports transfer—and thoroughly undermines IMRF's remarkably inaccurate assertion that Defendants did not "proffer[] any meaningful evidence" in their Motion. Opp. at 1. Further, IMRF is also wrong on the law. The Opposition fails to cite—and Defendants are not aware of—any precedent from any court denying transfer under similar circumstances. On the contrary, the case law amply supports transfer here.

While IMRF denies forum shopping, it still offers no explanation for its sudden opposition to litigating in the SDNY. IMRF and its counsel had previously represented in the SDNY Action that they were prepared to "vigorously prosecut[e]" these claims in that forum. *See* SDNY Action, ECF No. 21 at 2. But in an abrupt about-face, they now disclaim those statements—saying only

---

[1] All terms not defined herein shall have the same meaning as in the Motion (ECF No. 26).

that their application to lead the case was not an "appropriate place" to alert the SDNY court that their claims ought to proceed elsewhere.  Opp. at 4.

IMRF's inability to explain this gamesmanship speaks volumes.  The reality is that IMRF wants the case to stay in this District simply because it prefers not to litigate in the SDNY, where the assigned judge previously issued a strongly worded decision criticizing its counsel's conduct in a separate matter.  *See In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918 (S.D.N.Y. May 29, 2015) (Engelmayer, J.).  But this is, of course, not a valid reason to avoid a venue.  And as this Court and others around the country have made clear, a plaintiff's choice of forum is entitled to virtually ***no deference*** where (as here) IMRF does not reside in the District, is asserting claims on behalf of a nationwide class, and appears to be forum shopping.  The Court should transfer this Second Action to the SDNY where the same claims were first filed.

## <u>ARGUMENT</u>

### A.      **IMRF Concedes The Second Action Could Have Been Brought In New York**

The threshold question in evaluating a transfer motion is whether the case could have been brought in the transferee forum.  Mot. at 8.  IMRF does not dispute, and thus concedes, that this case plainly could have been brought in the SDNY; indeed, virtually the same case *was* filed in the SDNY several months prior.  *See Snodgrass v. Richardson*, 2024 WL 1260571, at *7 (E.D. Va. Mar. 25, 2024) (holding that a party concedes any arguments it fails to address in its opposition); Mot. at 5-6 (discussing the SDNY Action).  As a result, the Court need only decide whether transfer is appropriate considering: (1) the weight accorded to IMRF's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. Mot. at 8; Opp. at 2.  IMRF's Opposition underscores that each of these factors favor transfer to the SDNY.

**B.      The Interest Of Justice Favors Transfer To Discourage Forum Shopping**

IMRF also does not dispute the series of events that led to this duplicative Second Action being filed, but argues it has not engaged in forum shopping because it was not the party that filed either the original SDNY Action or this Second Action. Opp. at 3-5. This argument ignores that even today Illinois-based IMRF and their New York-based counsel (Labaton) are actively working to litigate this case in a District to which they have zero connection, and indeed opposed the transfer of this case to the SDNY *before* the SDNY Action was voluntarily dismissed. Moreover, for all of IMRF's emphasis on other plaintiffs' choice of forum, it has no answer to the fact that the plaintiff who filed this Second Action has registered no opposition to its transfer. Courts regularly rely on this sort of procedural history in assessing forum-shopping concerns. *See, e.g.*, *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, 2019 WL 1398172, at *13 (E.D. Va. Mar. 28, 2019) ("It is apparent from the procedural history of this case that plaintiff's choice to file here was at least partly motivated by forum-shopping."); *France v. Bernstein*, 2025 WL 350236, at *6 (E.D. Va. Jan. 30, 2025) (considering procedural history in determining plaintiff engaged in forum-shopping). Forum shopping is plainly underway. And each of IMRF's arguments to the contrary is without merit.

*First*, IMRF argues—without citation to any case law—that the first-filed rule is inapplicable because the SDNY Action was voluntarily dismissed shortly after Venture Global indicated it planned to seek transfer of this Second Action to the SDNY for consolidation with the SDNY Action. Opp. at 11. That simply is not the law.

Courts in this District and around the country have repeatedly ordered transfer to a forum where a related case was previously pending and then voluntarily dismissed. *See* Mot. at 11-12 (collecting cases). In these circumstances, courts continue to apply the first-filed rule because "[d]ismissal, followed by the reinstitution of a case to avoid a particular judge or precedent, is

3

exactly the kind of forum shopping anticipated and expressly prohibited by local rules of many districts." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at \*6 (N.D. Cal. Oct. 14, 2003).  As the Fourth Circuit has explained, "forum shopping must not be indulged in the face of multiple litigation[s] especially where, as here, the shopper is offered an equally convenient forum." *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 369 (4th Cir. 1967). The Opposition ignores these settled principles.  Judge Engelmayer—the judge assigned to the SDNY Action—responded to the notice of voluntary dismissal in that case by expressly noting he was "await[ing] the Eastern District of Virginia's resolution of the forthcoming motion to transfer venue of the separate action pending there."  SDNY Action, ECF No. 44 at 2.  Returning this Second Action to the SDNY would come as no surprise.

*Second*, IMRF offers no explanation why it became opposed to proceeding in the SDNY mere hours after Venture Global indicated it planned to transfer this Second Action to the SDNY for consolidation with the first-filed SDNY Action.  ECF No. 26-6 (Venture Global notice).  At the time, various law firms had already issued more than 140 public press releases to alert investors to the SDNY Action (pursuant to the PSLRA's statutory notice requirement), and IMRF and Labaton had just six days earlier explicitly assured the SDNY court that they were prepared to "vigorously prosecut[e]" the SDNY Action (*see* SDNY Action, ECF No. 21 at 2, 5-9), making no mention of a desire to avoid litigating the case in the SDNY.

IMRF now makes the remarkable assertion that its lead plaintiff motions in the SDNY Action were not the "appropriate place to make such arguments."  Opp. at 4.  If IMRF had a legitimate reason that it suddenly developed an opposition to the SDNY, it would have said so. The only rational inference from this silence—fully supported by the undisputed facts—is that after this Second Action was filed and IMRF and its counsel realized they were likely to be

appointed lead plaintiff/counsel, they saw an opportunity to try to avoid the SDNY and instead litigate in this Court.[2]  This sort of gamesmanship is the hallmark of impermissible forum shopping.  *See Samsung*, *Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 723 (E.D. Va. 2005) (denying transfer based on forum shopping by moving party that "altered its position drastically in an effort to dictate where litigation . . . would occur").

*Third*, IMRF and its counsel have chosen their words carefully in describing how these duplicative actions came to be filed and the SDNY Action came to be dismissed.  Although IMRF asserts that "neither *IMRF* nor *Labaton* filed either of the relevant actions" and "neither *IMRF* nor *Labaton* is in any way reluctant to litigate this Action before Judge Engelmayer" (Opp. at 5 & n.2 (emphases added)), IMRF's description of how the SDNY Action came to be dismissed asserts only that IMRF itself had no role, but says nothing at all about its counsel's role (*see id.* at 5 ("[I]t is simply not the case *that IMRF* attempted to maneuver to avoid a particular judge.") (emphasis added)).  This silence again speaks volumes.

*Fourth*, IMRF argues that the interest of justice favors keeping the Second Action here because of relative caseloads in this District and the SDNY.  Opp. at 10-12.  This, too, is contrary to law.  Courts in this District reject that premise—making clear that "[w]hen a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice is not served."  *Pragmatus AV, LLC v.*

---

[2] *Phillips v. Churchill Capital Corp. IV* (cited in Opp. at 4) provides no support for IMRF's position that it is somehow "appropriate" to misrepresent its willingness to litigate in a particular forum in order to be appointed lead plaintiff and then, once appointed, seek transfer.  In *Phillips*, there was only one class action pending, so the lead plaintiffs sought appointment in that case and then the court permitted transfer "under the very specific circumstances of this case," noting that it was distinct from a situation with "multiple competing federal actions pending in different district courts."  2021 WL 11628687, at *3 (N.D. Ala. Dec. 1, 2021).  Unlike in *Phillips*, at the time IMRF represented it would "vigorously prosecut[e]" the SDNY Action, both actions were pending.

*Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) (internal citations omitted); *see also Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 506 (E.D. Va. 2012) ("[I]f the EDVA's speed was afforded controlling weight in every venue transfer motion, cases better suited for resolution elsewhere would never make it out of the District."); *Original Ceatine Pat. Co. v. Met-Rx USA, Inc.,* 387 F. Supp. 2d 564, 572 (E.D. Va. 2005) ("[W]hen docket considerations are the primary reason a party has initiated an action in this court, as may be the situation in the instant case, the interest of justice is not served."); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999) ("Docket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue."). Here, IMRF—an Illinois-based plaintiff with no discernible Virginia ties—seeks to keep this Second Action in this District solely for self-serving purposes: to avoid a particular judge in the SDNY and in hopes of gaining some strategic litigation advantage by virtue of this District's "rocket docket." Such overt gamesmanship should not be rewarded. *See Pragmatus AV*, 769 F. Supp. 2d at 997; *Original Ceatine Pat. Co.*, 387 F. Supp. 2d at 572.

*Fifth*, IMRF argues that because a related shareholder derivative action was also subsequently filed in this District, the interest of justice favors keeping this Second Action here. Opp. at 11. But this factor now cuts the other way because the shareholder derivative action is no longer in this District. After seeing the arguments presented in this case, the parties to the derivative suit agreed to transfer that action to the SDNY, as the location of the first-filed class action and the more convenient location for many Defendants and other likely relevant non-parties. *See* Ex. 8 (so-ordered transfer stipulation), filed herewith. The Court so-ordered that stipulation earlier today. *Id.*

### C.    The Remaining Factors Favor Transfer

The Opposition gives relatively short shrift to the remaining factors, all of which similarly

point to the SDNY as the proper forum to litigate these claims.

### 1. IMRF's Choice Of Forum Should Be Disregarded

IMRF's claim that its choice of forum should be "afforded substantial weight," Opp. at 7, is flat wrong. As this Court has made clear, a "[p]laintiff's choice of forum [] is not entitled to substantial weight" where the plaintiff itself resides elsewhere. *StrikeForce Techs., Inc. v. Secureauth Corp.*, 2017 WL 8809781, at *1 (E.D. Va. Jun. 9, 2017) (Hilton, J.). This is particularly true in the class action context, where "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (citation omitted). And here, the plaintiff that filed in this District has not lodged any opposition to transfer.

Ignoring these and similar cases, IMRF cites inapposite decisions from outside the Fourth Circuit.[3] But even IMRF's own authority does not support its position here. For example, IMRF cites *Parchmann v. MetLife, Inc.*, for the proposition that "less deference . . . does not mean . . . no deference." Opp. at 7. But the court there ultimately afforded "significantly diminished deference" to the plaintiff's "choice of forum" because he was "a non-resident" and had "filed his pleading on behalf of a class of investors." 2018 WL 5115075, at *4 (E.D.N.Y. Sept. 28, 2018).

---

[3] IMRF cites *De Ford v. Koutoulas*, 2024 WL 3851257, at *4 (M.D. Fla. Aug. 16, 2024), to assert that plaintiff has a "venue privilege," (Opp. at 6-7), even though that concept exists nowhere in the Fourth Circuit and, in any event, the court in that case noted that its "most important[]" reason for denying transfer was that (unlike here) the case had been "pending for over twenty-eight (28) months and embodie[d] over three hundred and eighty-eight (388) docket entries." *Id.* Likewise, the "center of gravity" test used in *Lockhart v. Garzella*, 2020 WL 6146598 (S.D. Oh. Oct. 20, 2020) (cited in Opp. at 7) does not reflect the law of this Circuit and, in any event, the case is distinguishable because there were more plaintiffs located in the district where the action was filed than there were defendants in the transfer district. *Id.* at *7. And where IMRF does acknowledge precedents from within the Fourth Circuit, it cites a readily distinguishable individual action filed by a Virginia-based plaintiff. *See* Opp. at 7 (discussing *LIOBMedia, LLC v. Dataflow/Alaska, Inc.*, 2007 WL 2109279 (E.D. Va. Jul. 17, 2017)). This putative class action filed by a New York-based plaintiff and likely to be led by an Illinois-based entity stands in stark contrast.

The same is true here, and IMRF's late-breaking desire to litigate in this District—or, more accurately, to avoid litigating in the SDNY—should be disregarded.

### 2.    The SDNY Is The Most Convenient Forum For Parties And Witnesses

Nothing in the Opposition suggests this District is the more convenient forum. IMRF does not (and cannot) deny that the SDNY is more convenient for the many parties (and likely relevant non-parties) based in New York.

*First*, IMRF's argument that this District is more convenient for Venture Global personnel (Opp. at 8) is legally and factually wrong. Legally, Venture Global and its Defendant executives have joined in the instant transfer request, and a plaintiff "cannot defeat transfer based on the purported convenience of . . . employees where [their employers] seek transfer themselves." *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *3 (S.D.N.Y. May 30, 2019). IMRF's own cases are to the same effect. *See* Opp. at 7 (citing *Garity*, 2019 WL 2314691, at *3; *Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at *3 (S.D.N.Y. June 17, 2025) ("parties can waive the issue of their own convenience, in which case it is given no consideration in the analysis")). Factually, IMRF's convenience argument ignores Venture Global's indemnity obligations to the New York-based Underwriter Defendants. When cost and efficiency considerations are taken into account, New York is the more convenient forum for Venture Global. IMRF does not even attempt to identify any other potential witnesses for which a Virginia forum would be more convenient than New York—because there are none.

*Second*, there is no debate that New York is more convenient for the majority of the parties and relevant non-parties. Two of Venture Global's outside directors, all three Underwriter Defendants, and 13 of the 18 non-party underwriters involved in Venture Global's IPO are located

8

in New York. *See* Mot. at 15-16; ECF Nos. 26-1, 26-7.[4]  Courts routinely transfer cases where, as here, there are "numerous potential witnesses and sources of evidence" in the transferee district and no non-party witnesses are identified in the alternate forum. *Pragmatus AV*, 769 F. Supp. 2d at 996; *Bascom Rsch., LLC v. Facebook, Inc.*, 2012 WL 12918407, at *2 (E.D. Va. Dec. 11, 2012). IMRF's statement that it "is likely to exercise its discretion to name each underwriter [as a defendant] in an amended complaint," (Opp. at 9), only underscores the appropriateness of New York as the forum.  If IMRF ultimately names every IPO underwriter as a defendant, that would result in 18 out of 32 defendants being located in New York, with just four in this District—all four of whom support transfer.  That weighs strongly in favor of transfer.  *See In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,  2008 WL 4344531, at *5 (S.D.N.Y. Sept. 18, 2008) ("Four of the six Non–Lead Underwriter Defendants, on the other hand, reside in New York, which, at a minimum, makes this District a presumptively convenient forum for them.").

*Third*, IMRF is incorrect to argue that "the location of underwriters is afforded much less weight than the location of the issuer."  Opp. at 9.  IMRF's own authority confirms there is "no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered." *Steck*, 2015 WL 3767445, at *3 (cited in Opp. at 3, 7). Moreover, where (as here) claims are brought against issuers and underwriters together, the underwriters' location is an important factor  *Manchin v. PACS Group Inc., et al.*, 2025 WL 1276569, at *12 (S.D.N.Y. May 1, 2025).  As one SDNY decision recently observed:

> Although the statements alleged to be misleading may have emanated from [the issuer's headquarters], the offerings were underwritten by firms mainly located in New York, pursuant to underwriting agreements that provided that the lead underwriters, primarily located in New York, would purchase and then distribute the securities for delivery in New York, with indemnification and contribution

---

[4] The other five non-party underwriters are not located in either Virginia or New York (Mot. at 16; ECF No. 26-7), so some travel for these parties will be required regardless.

provisions enforceable in the courts of New York and governed by New York law. There is no dispute that the Underwriter Defendants' due diligence would have been conducted from New York and the securities sold from New York. . . . A court sitting in New York with a jury sitting in New York would have an interest in addressing the standard of care of underwriters sited in New York.

*Id.*[5]  In fact, in that case, the same law firm representing IMRF here (Labaton) successfully argued *against* transferring to the issuer's home forum because, among other reasons, the lawsuit included claims against New York-based financial institutions who served as underwriters of the relevant securities offering.  *Id.* at 3 (denying motion to transfer out of New York due to presence of New York-based underwriters).

*Fourth*, IMRF's claim that Defendants have not proffered sufficient evidence in support of transfer (Opp. at 6-9) is baseless, as it ignores the affidavit and voluminous documentary evidence Defendants submitted in support of their Motion.  *See* ECF No. 26-1 (declaration providing location of each individual defendant and information regarding the location of the Underwriter Defendants' employees who worked on the IPO); ECF No. 26-7 (exhibits detailing location of party and non-party underwriters); ECF No. 26-9 (SEC filing identifying location of other potential witnesses).  That evidence is more than sufficient.  *See, e.g.*, *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003) (finding sufficient that movant set out witness locations via affidavit); *Kattan v. Virginia Dep't of Environmental Quality*, 2021 WL 12256232, at *3 (E.D. Va. Dec. 22, 2021) (granting transfer based on declaration by defendant's employee).  And more to the point, IMRF's failure to rebut any of this evidence concedes there are no countervailing facts that support keeping this Second Action here.  *Koh*, 250 F. Supp. 2d at 636 (accepting affidavit absent "contrary evidence from the non-movant").

---

[5] Likewise, contrary to Plaintiff's argument (Opp. at 9), "the fact that the Underwriter Defendants' liability is contingent does not mean that the operative facts concerning the Underwriter's liability do not bear upon transfer," *Manchin*, 2025 WL 1276569, at *12 n.15.

### 3. More Parties Are Located In The SDNY

As noted, there is no dispute that more parties are located in New York and that the only Defendants present in this District are seeking to transfer to the SDNY for cost and efficiency reasons. Mot. at 15-17. And if IMRF makes good on its threat to add all of the underwriters as defendants (Opp. at 9), then there will be *13 more defendants* located in New York (Mot. at 16; ECF No. 26-7).

IMRF's final argument is that Defendants are "quick to dismiss" the location of relevant documents. Opp. at 10. Not so. All of the Underwriter Defendants' documents will be in New York, where they conducted their due diligence. *Manchin*, 2025 WL 1276569, at *12 ("There is no dispute that the Underwriter Defendants' due diligence would have been conducted from New York and the securities sold from New York."). And in addition to this factor being given less weight in the age of electronic discovery—which IMRF acknowledges (Opp. at 10)—Defendants are again presumed to waive any inconvenience from producing documents elsewhere when, as here, they are the parties seeking transfer, *Garity*, 2019 WL 2314691, at *3.

Plaintiff cites three cases, but each involved a company seeking a transfer to its home district—unlike a case where, as here, the relevant defendant has waived any inconvenience of litigating elsewhere. *See* Opp. at 10 (citing *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 2014 WL 1329417, at *9 (E.D. Va. Apr. 2, 2014), *StrikeForce*, 2017 WL 8809781, at *2, *Garity*, 2019 WL 2314691, at *3). Moreover, to the extent this factor still applies at all "in the age of electronic discovery," it is generally only a consideration "where the transferee forum likely houses the vast majority of documentary evidence relevant to the case and where little or no documentary evidence exists in the transferor forum." *Trs. of Columbia Univ. in City of New York*, 2014 WL 1329417, at *9. That is plainly not the case here, where documents are located in both Virginia and New York. *Manchin*, 2025 WL 1276569, at *13 (adopting presumption that

11

underwriters' documents "are located where those defendants are located—primarily in New York").

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court transfer this case to the United States District Court for the Southern District of New York.

Date: May 27, 2025

Respectfully submitted,

*/s/ Stephen P. Barry*
Stephen P. Barry (Va. Bar No. 81839)
Katherine A. Sawyer
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
stephen.barry@lw.com
katherine.sawyer@lw.com

Jeff G. Hammel (admitted *pro hac vice*)
Jason C. Hegt (admitted *pro hac vice*)
Corey Calabrese (*pro hac vice* forthcoming)
Melange T. Gavin (*pro hac vice* forthcoming)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
jeff.hammel@lw.com
jason.hegt@lw.com
corey.calabrese@lw.com
melange.gavin@lw.com

*Attorneys for Defendants Venture Global, Inc., Michael Sabel, Jonathan Thayer, Robert Pender, Sarah Blake, Sari Granat, Andrew Orekar, Thomas J. Reid, Jimmy Staton, and Roderick Christie*

12

*/s/ Patrick F. Stokes*
Patrick F. Stokes (admitted *pro hac vice*)
Lissa M. Percopo (admitted *pro hac vice*)
Michael R. Dziuban (VA 89136)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500
pstokes@gibsondunn.com
lpercopo@gibsondunn.com
mdziuban@gibsondunn.com

Robert F. Serio (admitted *pro hac vice*)
Mary Beth Maloney (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
rserio@gibsondunn.com
mmaloney@gibsondunn.com

*Attorneys for Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, and BofA Securities, Inc.*

13